UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
RONALD WAHL,

     Plaintiff,

    -against -

THE COUNTY OF SUFFOLK, THE SUFFOLK
COUNTY POLICE DEPARTMENT, COMMISSIONER
RICHARD DORMER, DEPUTY POLICE
COMMISSIONER ROGER SHANNON, INSPECTOR
ROBERT CASSAGNE, LIEUTENANT DENNIS
SULLIVAN, LIEUTENANT STEPHEN HERNANDEZ,
CAPTAIN PAUL RYAN, and DEPUTY INSPECTOR
EDWARD BRADY, individually and in their official
capacity,

     Defendants.
-----------------------------------------------------------------

**ORDER**
09-CV-1272 (SJF) (ARL)

**FEUERSTEIN, J.**

On March 26, 2009, plaintiff Ronald Wahl ("plaintiff") commenced this action against the County of Suffolk, the Suffolk County Police Department, Commissioner Richard Dormer, Deputy Commissioner Roger Shannon, Inspector Robert Cassagne, Deputy Inspector Edward Brady, Captain Paul Ryan, and Lieutenants Dennis Sullivan and Stephen Hernandez (collectively, "defendants"), alleging that defendants violated the Family and Medical Leave Act, 29 U.S.C. § 2601 (the "FMLA") and 42 U.S.C. § 1983 ("Section 1983").

Defendants filed a motion to for summary judgment on April 29, 2010. On February 14, 2011, Magistrate Judge Arlene R. Lindsay issued a Report and Recommendation (the "Report") pursuant to a referral, recommending that the defendants' motion be granted. Plaintiff filed objections to the Report ("Obj.") on February 28, 2011. Upon review of the Report and

1

consideration of plaintiff's objections, the objections are overruled and the Report accepted in its entirety.

I. Discussion

   A. Background

Plaintiff does not object to the Report's discussion of the facts or defendants' Rule 56.1 statement.

   1. Plaintiff's Complaint

Plaintiff was hired as a police officer by the Suffolk County Police Department ("SCPD") in 1986[1]. Report at 1. Plaintiff's child was born on December 20, 1999, and on January 14, 2000, plaintiff requested that he be permitted to take maternity leave and deduct the days taken from his accrued sick leave. *Id.* at 1-2. The SCPD rules and procedures and the applicable Collective Bargaining Agreement ("CBA") permits a pregnant female officer to take nine (9) months leave after birth and use accrued sick leave before being taken off of the payroll (the "maternity leave policy"). *Id.* at 2. The CBA also permits a parent to take nine (9) months "child care leave" during which accrued sick time cannot be used. *Id.* Plaintiff was informed that

---

[1] Plaintiff's objections state that plaintiff became a police officer in 1988. However, that assertion contradicts the complaint, ¶ 14, defendants undisputed Rule 56.1 statement, ¶ 1, and plaintiff's affidavit filed in opposition to the motion, ¶ 3.

2

"maternity leave" was only available to pregnant female officers, and told that he was eligible to take child care leave pursuant to the CBA or leave pursuant to the FMLA. *Id.* at 2. Plaintiff sent an internal memorandum to the police chief stating that leave was necessary because of the medical needs of his child, and that he believed this practice discriminated against male employees. *Id.*

On March 12, 2007, plaintiff's wife gave birth to another child. *Id.* at 3. On March 14, 2007, plaintiff submitted another request for maternity leave with the time to be deducted from accrued sick leave. *Id.* at 3. Plaintiff's request indicated that he believed that the policy allowing only pregnant women to use accrued sick leave during maternity leave was discriminatory against men. *Id.* at 3. Plaintiff's request was denied. *Id.* at 4.

### 2. Plaintiff's Disciplinary History

Between April 2005 and November 2006, plaintiff was "counseled" three times about the proper use of sick leave, and was warned that his sick leave would be monitored. *Id.* at 2. Between January 1 and February 14, 2007, plaintiff used seventeen (17) days of sick leave and received another admonition. *Id.* at 3. In the entire month of February 2007, plaintiff worked a total of seven (7) days and took seven (7) days sick leave. *Id.* On February 19, 2007, plaintiff was transferred to a different precinct because of "excessive absences." *Id.* at 2-3. At the new precinct, plaintiff was transferred at his request to a steady night schedule. *Id.* Based upon his history, plaintiff was required to provide a "doctor's certificate" following sick leave absences. *Id.* at 3. Between March 1 and March 18, 2007, plaintiff worked three and one-half (3½) days

3

and took four (4) days sick leave. *Id.* at 4. On March 19, plaintiff was transferred back to his previous assignment: a "two-tour day/evening schedule." *Id.*

Plaintiff filed a grievance pursuant to the CBA, alleging that he had been involuntarily transferred to a new schedule in an arbitrary and capricious manner. *Id.* On April 9, 2008, an arbitration hearing was held concerning plaintiff's grievance. The arbitrator upheld the transfer on the grounds that plaintiff's transfer was not arbitrary and capricious because: (1) during the daytime shift it was easier to find a replacement in the event plaintiff was absent; and (2) the shift had different supervisors and officers, and might motivate plaintiff to improve his attendance record. *Id.* at 4-5.

An investigation into plaintiff's use of sick time revealed that he had taken forty-seven and one-half (47½) days of sick leave in 2007. *Id.* at 5. Between March and June 2007, four (4) of the six (6) months he had sought to take maternity leave, plaintiff took sick leave for fifty-four percent (54%) of the days he was scheduled to work and, after taking additional vacation days and "sick family leave," worked only twenty-eight percent (28%) of his scheduled work days. *Id.* at 6. Plaintiff indicated that, although he suffered from stress and headaches, he had not seen a doctor, and sick leave absences were taken for child care issues. *Id.* at 5. On August 10, 2007, plaintiff was served with a Notice of Charges and Specifications for conduct unbecoming an officer as a result of his excessive and unjustified sick time leave. *Id.* at 5-6; Def. Motion, Exhibit S.

An arbitration hearing was held on June 13, 2008. Def. Motion, Exhibit T; Report at 6. Plaintiff was found guilty of the charges and was suspended without pay until October 31, 2008. *Id.* In November 2008, given five (5) hours notice, plaintiff was informed that he could return to

active duty. Report at 6. Instead, plaintiff retired. *Id.*

II. Analysis

Plaintiff argues that defendants' maternity leave policy discriminated against him because of his gender, and that he was retaliated against when he complained about the policy. Plaintiff also argues that defendants interfered with his statutory rights pursuant to FMLA, and retaliated against him for requesting FMLA leave.

A. Standard of Review

Rule 72 of the Federal Rules of Civil Procedure permits magistrate judges to conduct proceedings on dispositive pretrial matters without the consent of the parties. Fed. R. Civ. P. 72(b). Any portion of a report and recommendation on dispositive matters, to which a timely objection has been made, is reviewed *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). However, "general or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." Johnson v. Connolly, No. 9:07-CV-1237, 2010 WL 2628747, at *1 (N.D.N.Y. Jun. 25, 2010). See also Vega v. Artuz, No. 97 Civ. 3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (noting that "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review"). The court is not required to review the factual findings or legal conclusions of

the magistrate judge as to which no proper objections are interposed. See Thomas v. Arn, 474 U.S. 140, 150, 106 S. Ct. 466 (1985). Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

B. Plaintiff's Objections

The portions of the Report to which plaintiff's objects will be reviewed de novo. The portions of the Report to which no objections are interposed are not clearly erroneous and are therefore adopted as an order of the Court.

1. Summary Judgment Standard of Review

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (citations and quotation marks omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, VT, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." Id. at 532-33 (quotations and citations omitted).

2. Plaintiff's Fourteenth Amendment Claim

Plaintiff objects to the finding that the maternity leave policy complies with the equal protection clause of the Fourteenth Amendment. Obj. at 7. Plaintiff argues that the maternity leave policy is not substantially related to the achievement of "protecting pregnant women in the work place." Id. at 8. The Report found that the maternity leave policy was substantially related to "the goal of ending discrimination against pregnant workers and creating employment

equality." Report at 14. Plaintiff contends that the maternity leave policy treats pregnant women differently than new fathers in that women who have given birth are permitted to use their accrued sick leave pay and men are not. He does not argue that he was prevented from taking the same amount of time as child care leave.

"For a gender-based classification to withstand equal protection scrutiny, it must be established at least that the [challenged] classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." Tuan Anh Nguyen v. Immigration & Naturalization Serv., 533 U.S. 53, 60, 121 S. Ct. 2053, 150 L. Ed.2d 115 (2001) (internal citations omitted). When determining the purpose of a governmental activity, the Court may "draw[] logical conclusions from its text, structure, and operation." Id. at 67-68.

Plaintiff acknowledges that protecting pregnant women in the workplace is an important governmental objective. He contends that the maternity leave policy is not substantially related to the objective because the distinction "is not attributable to any different physical needs of men and women" on the basis that "a woman can take the leave even if she is capable of working." Obj. at 8. He argues that "the policy does not require any showing that the pregnancy affects a woman's ability to work," and that once a woman has given birth "she is no longer pregnant" and therefore the policy should treat new mothers and fathers the same. *Id.*

In California Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 281, 107 S. Ct. 683, 689, 93 L. Ed.2d 613, 623 (1987), the Supreme Court made a distinction between "a facially neutral leave policy that permits employees who have completed three [3] months of service to take unpaid leaves of absence for a variety of reasons, including disability and pregnancy," *id.* at 278,

and unconstitutional "protective labor legislation" that "reflect[ed] archaic or stereotypical notions about pregnancy and the abilities of pregnant workers." *Id.* at 290. Plaintiff contends that the maternity leave policy is an example of the latter category of an archaic and stereotypical notion about pregnancy: that women who have just given birth are not capable of working.

The maternity leave policy is narrowly drawn to cover the governmental interest in protecting pregnant mothers. The CBA, and the SCPD rules and procedures, permits an employee with at least one (1) year of service to take eighteen (18) months of maternity leave with no more than nine (9) months taken subsequent to the birth of the child. Def. Motion, Exhibit V ("CBA"), Section 26(a); *see also* Obj., Exhibit D, Section VI(B)(7). The employee may choose to use accrued sick leave, vacation or personal days, and compensatory time[2] "before being taken off the payroll." CBA § 26(a). The CBA permits an employee to take a child care leave of absence, *id.* § 26(b), which permits "any individual" to take child care leave of up to nine (9) months after the birth of a child, *id.* at Appendix C, Section (1), however no leave accruals may be used. *Id.* § (4)(d).

Judge Lindsay correctly noted that modern era pregnancy and childbirth involve a number of medical procedures and recovery time, which require repeated visits to specialized doctors and time to address and investigate a variety of possible complications. The provision allowing women who are actually pregnant to use accrued sick leave is narrowly tailored to address these concerns. Notably, all employees are permitted to take the same time as child care leave after the birth of a child. Men and women who are not pregnant are treated equally. Men and women

---

[2]Plaintiff only challenges the ability to use accrued sick leave. Rep. at 2 n. 2.

9

who are not pregnant may use their accrued vacation leave and personal leave days in lieu of maternity leave, should they chose to do so. *See* Def. Motion, Exhibit D. Although it is true that only women are capable of pregnancy, Guerra establishes that narrowly tailored accommodations of pregnancy are permitted by the equal protection clause, and are sometimes required by the Pregnancy Discrimination Act of 1978, codified at 42 U.S.C. § 2000e(k). The ability to use accrued sick days while on post birth leave is narrowly tailored to the specific needs of an employee who is actually pregnant or has just given birth.

Plaintiff's argument that women are not required to show that they are physically unable to work after giving birth, and that therefore, the policy is not narrowly tailored to the actual physical disability on behalf of the pregnancy is unconvincing. The ability to use accrued sick leave does not reflect the "[s]tereotypes about women's domestic roles " and corresponding "stereotypical views about women's commitment to work and their value as employees" in the manner warned against in Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 736, 123 S. Ct. 1972, 155 L .Ed.2d 953 (2003). The maternity leave policy is substantially related to the actual medical requirements of pregnancy and birth, not traditional notions of a mother's role in the family. The CBA treats domestic and familial responsibilities of all new parents equally by permitting new parents of any gender nine (9) months leave and permits only employees who have given birth to use accrued sick leave.

3.  The Constitutionality of the CBA

Plaintiff objects to the finding that there was no legal basis to strike the freely negotiated

maternity leave provision of the CBA on the basis that plaintiff's union is not permitted to waive his constitutional rights. Obj. at 5. As there has been no violation of his constitutional rights, this argument is inapposite.

    4.    Plaintiff's First Amendment Retaliation Claim

Plaintiff objects to the finding that he did not demonstrate a causal connection between his speech and the adverse employment actions alleged. Obj. at 12.

To establish a First Amendment retaliation claim, plaintiff must establish, *inter alia*, that "a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). A plaintiff may indirectly establish a causal connection where he or she demonstrates that the protected speech is closely followed in time by the adverse employment action. See Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 553-56 (2d Cir. 2001). However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 95 (2d Cir. 2001). Furthermore, although a plaintiff may establish a causal connection "even when a retaliatory motive is not the sole cause of the adverse employment action, . . . [a] retaliatory motive must be, however, at least a substantial or motivating factor behind the adverse action. Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001)(citations omitted).

11

Defendants have presented evidence that plaintiff was officially advised approximately three (3) times with "Sick Time Counseling Reports" that the department was concerned about his misuse of sick time well before the 2007 memorandum that plaintiff contends is protected speech. *See* Def. Motion, Exhibits E-G. Plaintiff has not presented any evidence to rebut these counseling reports. Therefore, no inference of a causal connection will be drawn.

Even if a *prima facie* case were established, plaintiff has failed to offer sufficient evidence to raise a genuine issue as to whether the legitimate non-retaliatory reasons given by the defendant for taking the adverse action were pretextual. Plaintiff argues there is a genuine issue of fact in that: there had been no explanation for some of the adverse actions; defendants decision to seek plaintiffs termination was unwarranted; plaintiff was required to return immediately after the suspension; defendant Dormer referred to plaintiff as a "cancer" and wanted him "gone"; plaintiff was transferred to foot patrol; and progressive discipline was skipped. Obj. at 13. None of these issues demonstrate any connection between his purportedly protected speech and the adverse employment actions. Even if plaintiff were able to prove these allegations, they create no genuine issue of fact that would demonstrate that the decision was made without any impermissible motive, especially in light of the evidence of plaintiff's attendance record and the steps defendants took prior to initiating termination proceedings against him. See Texas v. Lesage, 528 U.S. 18, 20-21, 120 S. Ct. 467, 145 L. Ed.2d 347 (1999); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed.2d 471 (1977).

5. Plaintiff's FMLA Retaliation Claim

Plaintiff objects to the finding that there was no evidence to support plaintiff's claim pursuant to the FMLA on the basis that the Report "overlooks" his FMLA retaliation claim. Obj. at 15. Plaintiff's argument that he was retaliated against because he exercised his rights under the FMLA. This claim is not alleged in the complaint, and is not supported by any facts. After a review of the evidence submitted to the Court, it appears plaintiff was repeatedly told that he could apply for child care leave pursuant to the CBA and the SCPD rules and procedures. Plaintiff has not claimed that he was denied child care leave or FMLA leave, only that he was denied maternity leave pursuant to the CBA and SCPD rules and procedures. In any event, as discussed above, plaintiff is unable to demonstrate that there was a causal connection between his request for leave and the adverse employment actions taken against him.

III. Conclusion

For the foregoing reasons, plaintiff's objections are overruled, the Report is accepted in its entirety, and defendants' motion for summary judgment is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Sandra J. Feuerstein
United States District Judge

Dated: March 16, 2011
Central Islip, New York

13